UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

NATIONAL RAILROAD PASSENGER CORP.,

    Plaintiffs,

 - against -

T.C. JOHNSON COMPANY, TRANSPORTATION
RESOURCES INC., MITCHELL EQUIPMENT
CORPORATION, TEREX CORPORATION, KOEHRING
CRANES, INC. d/b/a TEREX CRANES WAVERLY, and
TEREX CRANES, INC.,

    Defendants.
------------------------------------------------------------------X

**'07 CIV 6288**

**COMPLAINT**



**PLAINTIFF DEMANDS TRIAL BY JURY**

 The plaintiff National Railroad Passenger Corporation (hereinafter "Amtrak"), by its

attorneys, Landman Corsi Ballaine & Ford P.C., as and for its complaint against the defendants

T.C. JOHNSON COMPANY ("Johnson"), TRANSPORTATION RESOURCES INC. ("TRI"),

MITCHELL EQUIPMENT CORPORATION ("Mitchell"), TEREX CORPORATION,

KOEHRING CRANES, INC. d/b/a TEREX CRANES WAVERLY ("Koehring"), and TEREX

CRANES, INC. alleges, upon information and belief, as follows:

 1. At all material times, plaintiff Amtrak was, and now is, a Congressionally-created

corporation created under the Rail Passenger Service Act, 49 U.S.C. § 24301, et seq.

 2. At all material times, plaintiff Amtrak was a District of Columbia corporation

with its principal place of business in the District of Columbia.

 3. At all material times, plaintiff Amtrak was, and still is, in the railroad business.

440311.1 DocsNY

4.    Plaintiff Amtrak owns and operates railroad equipment, including high rail vehicles in the United States, including in the vicinity of Sunnyside Yard, Queens, New York.

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1349 on the grounds that plaintiff Amtrak, is a corporation created pursuant to the Rail Passenger Service Act, 49 U.S.C. § 24301, et seq., and more than one-half of its capital stock is owned by the Government of the United States.

6.    This Court has venue over this action pursuant to 28 U.S.C. § 1391(b) because Amtrak maintains offices in the Southern District of New York.

7.    This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

8.    Plaintiff Amtrak is a foreign corporation with its principal place of business in Washington, D.C.

9.    The amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.

10.    Defendants Johnson, TRI, Mitchell, Terex Corporation, Koehring, and Terex Cranes, Inc. are foreign corporations.

11.    Defendant Johnson is located in Gladstone, Missouri. Defendant TRI is located in Gladstone, Missouri. Defendant Mitchell is located in Monclova, Ohio. Defendant Terex Corporation is located in Westport, Connecticut. Defendant Koehring is located in Waverly, Iowa. Defendant Terex Cranes, Inc. is located in Waverly, Iowa.

## STATEMENT OF FACTS

12.    On or about July 10, 2004, an accident involving a Terex crane and flatbed high rail vehicles occurred at or near the mouth of a tunnel connecting to Queens, New York and Manhattan, New York, wherein several people allege that they were injured.

13.    Louis Cevasco, an employee of STV Incorporated, alleges that he sustained personal injuries as a result of the accident.

14.    Jugal K. Sood, an employee of STV Incorporated, alleges that he sustained personal injuries as a result of the accident.

15.    Girolamo Vitale and Joseph Adornetti, both employees of Crescent Contracting Corp., allege that they sustained personal injuries as a result of the accident.

16.    Edley Gayle, an Amtrak employee, alleges that he sustained personal injuries as a result of the accident.

17.    As a result of the July 10, 2004 accident, personal injury actions were commenced by Louis Cevasco, Jugal K. Sood, Girolamo Vitale, Joseph Adornetti and Edley Gayle against the plaintiff herein.  The actions are identified as follows:

(a)    Louis Cevasco et ano. v. National Railroad Passenger Corp., et al., 04 CV 5760;

(b)    Jugal K. Sood v. National Railroad Passenger Corp., et al., 05 CV 7419;

(c)    Girolamo Vitale et ano. v. National Railroad Passenger Corp., et al., 06 CV 6195;

(d)    Joseph Adorentti et ano. v. National Railroad Passenger Corp., et al., 06 CV 6196; and

(e)    Edley Gayle v. National Railroad Passenger Corp., et al., 06 CV 6956.

18.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of the Terex crane involved in the July 10, 2004 accident.

19.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of a second similar Terex crane.

## AS AND FOR A FIRST CAUSE OF ACTION

20.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "19" as if more fully set forth at length herein.

21.—    On or about July 10, 2004 and at all times relevant, defendant Johnson was a foreign corporation transacting business within the State of New York.

22.    On or about July 10, 2004 and at all times relevant, defendant Johnson was a foreign corporation which contracted to supply goods or services in the State of New York.

23.    On or about July 10, 2004 and at all times relevant, defendant Johnson was a corporation which committed a tortious act within the State of New York.

24.    On or about July 10, 2004 and at all times relevant, defendant Johnson was a corporation which committed a tortious act outside of the State of New York causing an alleged injury to person or property within the State of New York.

25.    On or about July 10, 2004 and at all times relevant, defendant Johnson was a corporation which regularly does or solicits business, or engages in any other persistent course of

conduct, or derives substantial revenue from goods used or consumed or services rendered in the
State of New York.

26.    On or about July 10, 2004 and at all times relevant, defendant Johnson was a
corporation which expected or should have reasonably expected its acts to have consequences in
the State of New York.

27.    On or about July 10, 2004 and at all times relevant, defendant Johnson was a
corporation which derived substantial revenue from interstate or international commerce.

28.    That prior to July 10, 2004, defendant Johnson designed, manufactured,
distributed and/or sold Terex cranes equipped with high rail gear.

29.    That prior to July 10, 2004, defendant Johnson entered into an agreement
with plaintiff Amtrak whereby and where under defendant Johnson was to supply to plaintiff
Amtrak goods and services, including the aforementioned products.

30.    That plaintiff Amtrak has performed all terms and conditions of the agreement on
its part required to be performed.

31.    That prior to July 10, 2004, the said agreement was in full force and effect.  The
plaintiff Amtrak begs leave to refer and incorporate herein by reference the terms and provisions
of the agreement between Amtrak and Johnson with the same force and effects as if fully set
forth herein.

32.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property
damage and/or loss, including but not limited to permanent loss of use of the Terex crane
involved in the July 10, 2004 accident.

33.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of a second similar Terex crane.

34.    That as a result of defendant Johnson's breach of contract, defendant Johnson will be liable to the plaintiff Amtrak for property damage and/or loss arising out of the July 10, 2004 accident.

35.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

### AS AND FOR A SECOND CAUSE OF ACTION

36.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "35" as if more fully set forth at length herein.

37.    That plaintiff Amtrak's property damage and/or loss were caused by the active, affirmative and primary negligence of the defendant Johnson in the design, manufacture, distribution and/or sale of the aforementioned Terex cranes equipped with high rail gear without any active participation therein by plaintiff Amtrak contributing thereto.

38.    That by reason of the foregoing, defendant Johnson will be liable to the plaintiff Amtrak for property damage and/or loss arising out of defendant Johnson's failure to provide Amtrak with safe equipment.

39.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION

40.     Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "39" as if more fully set forth at length herein.

41.     Defendant Johnson knew that the aforementioned Terex cranes equipped with high rail gear were to be resold and/or used by the general public and/or Amtrak and/or used on interstate rails and the defendant Johnson knew the use for which the aforementioned Terex cranes equipped with high rail gear were intended.

42.     That in the sale of aforementioned Terex cranes equipped with high rail gear to plaintiff Amtrak, the defendant Johnson represented and warranted that the aforementioned Terex cranes equipped with high rail gear were of merchantable quality and were suitable and fit for its particular purpose.

43.     That the aforementioned Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant Johnson to plaintiff defendant Amtrak, which had no knowledge of such defect.

44.     That defendant Johnson breached its warranties of merchantability and fitness for the aforementioned Terex cranes equipped with high rail gear for the use intended.

45.     That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION

46.     Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "45" as if more fully set forth at length herein.

47.     That prior to July 10, 2004, defendant Johnson had reason to know that there were dangers associated with the use of the aforementioned Terex Cranes.

440311.1 DocsNY                             7

48.    That prior to July 10, 2004, defendant Johnson had no reason to believe the purchasers of the Terex Cranes, including plaintiff Amtrak, would be aware of the dangerous conditions.

49.    That prior to July 10, 2004, defendant Johnson had a duty to warn the purchasers of Terex Cranes, including plaintiff Amtrak, of the dangers associated with the use of the Terex Cranes, including the subject Terex Cranes.

50.    That prior to July 10, 2004, defendant Johnson did not warn the purchasers of the Terex Cranes, including plaintiff Amtrak, of a defect with the Terex Cranes, including the subject Terex Cranes.

51.    That prior to July 10, 2004, defendant Johnson failed to exercise reasonable care to warn users of the conditions or facts that made the Terex Cranes, including the subject Terex Cranes, likely to be dangerous.

52.    That to the extent that defendant Johnson Company issued a warning with respect to the Terex Cranes, including the subject Terex Cranes, the warning was inadequate.

53.    That defendant Johnson Company's failure to warn was the proximate cause of plaintiff's property damage and/or loss.

54.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A FIFTH CAUSE OF ACTION

55.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "54" as if more fully set forth at length herein.

56.     On or about July 10, 2004 and at all times relevant, defendant TRI was a foreign corporation transacting business within the State of New York.

57.     On or about July 10, 2004 and at all times relevant, defendant TRI was a foreign corporation which contracted to supply goods or services in the State of New York.

58.     On or about July 10, 2004 and at all times relevant, defendant TRI was a corporation which committed a tortious act within the State of New York.

59.     On or about July 10, 2004 and at all times relevant, defendant TRI was a corporation which committed a tortious act outside of the State of New York causing an alleged injury to person or property within the State of New York.

60.     On or about July 10, 2004 and at all times relevant, defendant TRI was a corporation which regularly did or solicited business, or engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of New York.

61.     On or about July 10, 2004 and at all times relevant, defendant TRI was a corporation which expected or should have reasonably expected its acts to have consequences in the State of New York.

62.     On or about July 10, 2004 and at all times relevant, defendant TRI was a corporation which derived substantial revenue from interstate or international commerce.

63.     That prior to July 10, 2004, defendant TRI designed, manufactured, distributed and/or sold Terex cranes equipped with high rail gear which are the subject of this action.

64.    That prior to July 10, 2004, defendant TRI entered into an agreement with plaintiff Amtrak whereby and where under defendant TRI was to supply to plaintiff Amtrak goods and services, including the aforementioned products.

65.    That plaintiff Amtrak has performed all terms and conditions of the agreement on its part required to be performed.

66.    That prior to and at all times hereinafter mentioned, the said agreement was in full force and effect.  The plaintiff Amtrak begs leave to refer and incorporate herein by reference the terms and provisions of the agreement between Amtrak and TRI with the same force and effects as if fully set forth herein.

67.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of the Terex crane involved in the July 10, 2004 accident.

68.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of a second similar Terex crane.

69.    That as a result of defendant Johnson's breach of contract, defendant Johnson will be liable to the plaintiff Amtrak for property damage and/or loss arising out of the July 10, 2004 accident.

70.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A SIXTH CAUSE OF ACTION

440311.1 DocsNY                          10

71.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "70" as if more fully set forth at length herein.

72.    That plaintiff Amtrak's property damage and/or loss were caused by the active, affirmative and primary negligence of the defendant TRI in the design, manufacture, distribution and/or sale of the aforementioned Terex cranes equipped with high rail gear without any active participation therein by plaintiff Amtrak contributing thereto.

73.    That by reason of the foregoing, defendant TRI will be liable to the plaintiff Amtrak for property damage and/or loss arising out of defendant TRI's failure to provide Amtrak with safe equipment.

74.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A SEVENTH CAUSE OF ACTION

75.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "74" as if more fully set forth at length herein.

76.    Defendant TRI knew that the aforementioned Terex cranes equipped with high rail gear were to be resold and/or used by the general public and/or Amtrak and/or used on interstate rails and the defendant TRI knew the use for which the aforementioned Terex cranes equipped with high rail gear were intended.

77.    That in the sale of aforementioned Terex cranes equipped with high rail gear to plaintiff Amtrak, the defendant TRI represented and warranted that the aforementioned Terex cranes equipped with high rail gear were of merchantable quality and were suitable and fit for its particular purpose.

440311.1 DocsNY                                11

78.     That the aforementioned Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant TRI to plaintiff defendant Amtrak, which had no knowledge of such defect.

79.     That plaintiff Amtrak was caused to sustain property damage and/or loss as a result of the defective condition in the aforementioned high rail gear for the Terex cranes; the aforementioned high rail gear for the Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant TRI to defendant Mitchell and/or Johnson.

80.     That defendant TRI breached its warranties of merchantability and fitness for the aforementioned Terex cranes equipped with high rail gear for the use intended.

81.     That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

82.     Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "81" as if more fully set forth at length herein.

83.     That prior to July 10, 2004, defendant TRI had reason to believe that there were dangers associated with the use of the aforementioned Terex Cranes.

84.     That prior to July 10, 2004, defendant TRI had no reason to believe that purchasers of the Terex Cranes, including plaintiff Amtrak, would be aware of the dangerous conditions.

85.     That prior to July 10, 2004, defendant TRI had a duty to warn the purchasers of the Terex Cranes, including plaintiff Amtrak, of the dangers associated with the use of the Terex Cranes, including the subject Terex Cranes.

86.    That prior to July 10, 2004, defendant TRI did not warn the purchasers of the Terex Cranes, including plaintiff Amtrak, of a defect with the Terex Cranes, including the subject Terex Cranes.

87.    That prior to July 10, 2004, defendant TRI failed to exercise reasonable care to warn users of the conditions or facts that made the Terex Cranes, including the subject Terex Cranes, likely to be dangerous.

88.    That to the extent that defendant TRI issued a warning with respect to the Terex Cranes, including the subject Terex Cranes, the warning was inadequate.

89.    That defendant TRI's failure to warn was the proximate cause of the plaintiff's property damage and/or loss.

90.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A NINTH CAUSE OF ACTION

91.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "90" as if more fully set forth at length herein.

92.    That defendant TRI is the successor in interest to defendant Johnson.

93.    That defendant TRI is therefore responsible and liable for all tortious acts, legal responsibilities and liabilities of defendant Johnson.

94.    That defendant TRI is therefore responsible and liable to plaintiff Amtrak.

95.    That plaintiff Amtrak's property damage and/or loss were caused by defendant Johnson's breach of contract.

440311.1 DocsNY                                    13

96.    That by reason of the foregoing, the defendant TRI will be liable to plaintiff Amtrak for all property damage and/or loss.

## AS AND FOR A TENTH CAUSE OF ACTION

97.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "96" as if more fully set forth at length herein.

98.    That plaintiff Amtrak's property damage and/or loss were caused by the act of affirmative and primary negligence of the defendant Johnson in the design, manufacture, distribution and/or sale of the aforementioned Terex cranes equipped with high rail gear without any active participation therein by plaintiff Amtrak contributing thereto.

99.    That by reason of the foregoing, the defendant TRI is responsible for the active, affirmative and primary negligence of defendant Johnson in the design, manufacture, distribution and/or sale of the aforementioned Terex cranes equipped with high rail gear without any active participation therein by plaintiff Amtrak contributing thereto.

100.    That by reason of the foregoing, the defendant TRI will be liable to plaintiff Amtrak for all property damage and/or loss.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

101.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "100" as if more fully set forth at length herein.

102.    That defendant Johnson knew that the aforementioned Terex cranes equipped with high rail gear were to be resold and/or used by the general public and/or Amtrak and/or used on interstate rails and the defendant Johnson knew the use for which the aforementioned Terex cranes equipped with high rail gear were intended.

103.    That in the sale of the aforementioned Terex cranes equipped with high rail gear to plaintiff Amtrak, the defendant Johnson represented and warranted that the aforementioned Terex cranes equipped with high rail gear were of merchantable quality and were suitable and fit for its particular purpose.

104.    That the aforementioned Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant Johnson to plaintiff defendant Amtrak, which had no knowledge of such defect.

105.    That defendant Johnson breached its warranties of merchantability and fitness for the aforementioned Terex cranes equipped with high rail gear for the use intended.

106.    That by reason of the foregoing, the defendant TRI will be liable to plaintiff Amtrak for all property damage and/or loss.

## AS AND FOR A TWELFTH CAUSE OF ACTION

107.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "106" as if more fully set forth at length herein.

108.    That prior to July 10, 2004, defendant Johnson had reason to know that there were dangers associated with the use of the aforementioned Terex Cranes.

109.    That prior to July 10, 2004, defendant Johnson had no reason to believe the purchasers of the Terex Cranes, including plaintiff Amtrak, would be aware of the dangerous conditions.

110.    That prior to July 10, 2004, defendant Johnson had a duty to warn the purchasers of Terex Cranes, including plaintiff Amtrak, of the dangers associated with the use of the Terex Cranes, including the subject Terex Cranes.

111.    That prior to July 10, 2004, defendant Johnson did not warn the purchasers of the Terex Cranes, including plaintiff Amtrak, of a defect with the Terex Cranes, including the subject Terex Cranes.

112.    That prior to July 10, 2004, defendant Johnson failed to exercise reasonable care to warn users of the conditions or facts that made the Terex Cranes, including the subject Terex Cranes, likely to be dangerous.

113.    That to the extent that defendant Johnson issued a warning with respect to the Terex Cranes, including the subject Terex Cranes, the warning was inadequate.

114.    That defendant Johnson Company's failure to warn was the proximate cause of plaintiff's property damage and/or loss.

115.    That by reason of the foregoing, the defendant TRI will be liable to plaintiff Amtrak for all property damage and/or loss.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

116.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "115" as if more fully set forth at length herein.

117.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a foreign corporation transacting business within the State of New York.

118.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a foreign corporation which contracted to supply goods or services in the State of New York.

119.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a corporation which committed a tortious act within the State of New York.

120.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a corporation which committed a tortious act outside of the State of New York causing an alleged injury to person or property within the State of New York.

121.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a corporation which regularly did or solicited business, or engaged in any other persistent course of conduct, or derived substantial revenue from goods used or consumed or services rendered in the State of New York.

122.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a corporation which expected or should have reasonably expected its acts to have consequences in the State of New York.

123.    On or about July 10, 2004 and at all times relevant, defendant Mitchell was a corporation which derived substantial revenue from interstate or international commerce.

124.    That prior to July 10, 2004, defendant Mitchell designed, manufactured, distributed and/or sold the high rail gear for the Terex cranes, which are the subject of this action.

125.    That prior to July 10, 2004, defendant Mitchell entered into an agreement with defendant Johnson whereby and where under defendant Mitchell was to supply to defendant Johnson goods and services, including the aforementioned products, to be resold by defendant Johnson to its customers, including plaintiff Amtrak.

126.    That prior to July 10, 2004, defendant Mitchell entered into an agreement with defendant TRI, whereby and where under defendant Mitchell was to supply defendant TRI with high rail gear for the Terex cranes, including the aforementioned products, to be resold by defendant TRI to its customers, including Amtrak.

127.    That prior to July 10, 2004, defendant Mitchell entered into an agreement with defendant TRI whereby and where under defendant Mitchell was to supply to defendant TRI goods and services, including the aforementioned high rail gear for the Terex cranes, to be resold by defendant TRI to its customers, including plaintiff Amtrak.

128.    That plaintiff Amtrak has performed all terms and conditions of the agreement(s) on its part required to be performed.

129.    That prior to and at all times hereinafter mentioned, the said agreements were in full force and effect. The plaintiff Amtrak begs leave to refer and incorporate herein by reference the terms and provisions of the above-described agreements with the same force and effects as if fully set forth herein.

130.    That are a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of the Terex crane involved in the July 10, 2004 accident.

131.    That as a result of the July 10, 2004 accident, plaintiff Amtrak suffered property damage and/or loss, including but not limited to permanent loss of use of a second similar Terex crane.

132.    That as a result of defendant Mitchell's breach of contract, defendant Mitchell will be liable to the plaintiff Amtrak for property damage and/or loss arising out of the July 10, 2004 accident.

133.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

134.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "133" as if more fully set forth at length herein.

135.    That plaintiff Amtrak's property damage and/or loss were caused by the active, affirmative and primary negligence of the defendant Mitchell in the design, manufacture, distribution and/or sale of the aforementioned Terex cranes equipped with high rail gear without any active participation therein by plaintiff Amtrak contributing thereto.

136.    That by reason of the foregoing, defendant Mitchell will be liable to the plaintiff Amtrak for property damage and/or loss arising out of defendant Mitchell's failure to provide Amtrak with safe equipment.

137.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

138.    Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "137" as if more fully set forth at length herein.

139.    Defendant Mitchell knew that the aforementioned Terex cranes equipped with high rail gear were to be resold and/or used by the general public and/or Amtrak and/or used on interstate rails and the defendant Mitchell knew the use for which the aforementioned Terex cranes equipped with high rail gear were intended.

140.    That in the sale of aforementioned Terex cranes equipped with high rail gear to plaintiff Amtrak, the defendant Mitchell represented and warranted that the aforementioned Terex cranes equipped with high rail gear were of merchantable quality and were suitable and fit for its particular purpose.

141. That the aforementioned Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant Mitchell to plaintiff defendant Amtrak, which had no knowledge of such defect.

142. That the aforementioned high rail gear for the Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant Mitchell to defendant Johnson and/or defendant TRI.

143. That plaintiff Amtrak was caused to sustain property damage and/or loss as a result of the defective condition in the aforementioned Terex cranes equipped with high rail gear, and that the aforementioned Terex cranes equipped with high rail gear were in such defective condition when sold, distributed and/or delivered by defendant Mitchell to plaintiff Amtrak, which had no knowledge of such defect.

144. That the aforementioned high rail gear for the Terex cranes were in such defective condition when sold, distributed and/or delivered by defendant Mitchell to defendant Johnson and/or defendant TRI.

145. That defendant Mitchell breached its warranties of merchantability and fitness for the aforementioned Terex cranes equipped with high rail gear for the use intended.

146. That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION

147. Plaintiff Amtrak repeats and realleges the allegations set forth in paragraphs "1" through "146" as if more fully set forth at length herein.

148.    That prior to July 10, 2004, defendant Mitchell had reason to know there were dangers associated with the use of the aforementioned Terex Cranes.

149.    That prior to July 10, 2004, defendant Mitchell had no reason to believe that purchasers of the Terex Cranes, including the plaintiff Amtrak, would be aware of the dangerous conditions.

150.    That prior to July 10, 2004, defendant Mitchell had a duty to warn the purchasers of the Terex Cranes, including plaintiff Amtrak, of the dangers associated with the use of the Terex Cranes, including the subject Terex Cranes.

151.    That prior to July 10, 2004, defendant Mitchell did not warn the purchasers of the Terex Cranes, including plaintiff Amtrak, of a defect with the Terex Cranes, including the subject Terex Cranes.

152.    That prior to July 10, 2004, defendant Mitchell failed to exercise reasonable care to warn users of the conditions or facts that made the Terex Cranes, including the subject Terex Cranes, likely to be dangerous.

153.    That to the extent that defendant Mitchell issued a warning with respect to the Terex Cranes, including the subject Terex Cranes, the warning was inadequate.

154.    That defendant Mitchell's failure to warn was the proximate cause of plaintiff's property damage and/or loss.

155.    That plaintiff has sustained damages, for loss of use of these two cranes, estimated in the sum of over EIGHT HUNDRED THOUSAND ($800,000.00) DOLLARS.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION